IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| York Technical College, | ) | C/A No.: 0:20-cv-00775-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **OPINION & ORDER** |
| Joint Review Committee on Education | ) | |
| in Radiology Technology | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Defendant Joint Review Committee on Education in Radiology Technology ("Defendant")'s Motion to Dismiss on the Basis of Mootness, and Plaintiff York Technical College ("Plaintiff")'s Motion for Additional Discovery. [ECF Nos. 17, 20.] After an in-depth review of relevant case law and arguments of the parties, the court grants Defendant's motion in part and denies Plaintiff's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a public, two-year institution of higher education located in York County, South Carolina. [ECF No. 1, Compl. at ¶ 1.] It offers 108 academic programs, including a Radiologic Technology Program ("RT Program"). *Id.* at ¶¶ 1, 10. Defendant is an accrediting agency; the only accrediting agency in the United States recognized by the Secretary of the U.S. Department of Education and the Council for Higher Education Accreditation to accredit radiology, radiation therapy, magnetic resonance, and medical dosimetry programs. *Id.* at ¶ 2; [*see also* ECF No. 6, Ans. at ¶ 2 (admitting the allegations of paragraph 2 of the complaint).] In August 2015, Defendant issued Plaintiff's RT Program an eight-year accreditation—the maximum period that programs may be accredited for before having to apply for reaccreditation. Compl. at ¶ 8.

In July 2018, the RT Program Director disciplined a student ("Student") for allegedly falsifying a program document by falsifying an instructor's signature ("Disciplinary Matter"). *Id*. at ¶ 14. As sanctions for the Disciplinary Matter, Plaintiff issued Student a grade of "WF" in Advanced Radiology and permanently dismissed the student from the program. *Id*. Student subsequently appealed the sanctions and the underlying charge. *Id*. at ¶ 17.

After an October 2018 appeal hearing, Plaintiff's Executive Vice-President for Academic and Student Affairs reversed Student's dismissal, determining that removal from the program was not a proper sanction for Student's misconduct, but upheld the grade of WF. *Id*. Thereafter, Student appealed directly to the President, who sent the appeal to an internal hearing committee ("Hearing Committee"). *Id.* at ¶ 18. At that time, the technologist, whose signature was allegedly falsified by the student, came forward and provided a statement that the alleged falsification was in fact a clerical error. *Id*. Based on the technologist's statement, the Hearing Committee overturned the charge and the grade of WF. *Id*. Student was given the option to re-enter the program after completing a skills check, an option that Student declined. *Id.*; *see id*. at ¶ 21 n. 2.

In March 2019, Defendant notified Plaintiff of a complaint that was levied against the program stemming from the Disciplinary Matter. *Id.* at ¶ 19. Defendant asked Plaintiff to submit an explanation of events with documentation supporting Plaintiff's compliance with certain required objectives. *Id.* at 20. The response was due April 8, 2019, and Plaintiff contends it timely provided the response. *Id.* at 21.

On April 15, 2019, just a week after its complaint response was due and as part of the regular accreditation process, Plaintiff was required to submit its interim report to Defendant. *Id.* at ¶ 22. In response to Plaintiff's submission, Defendant notified Plaintiff that its accreditation was being reduced from eight years to five years because Defendant found Plaintiff non-compliant with two

accreditation objectives. *Id.* at ¶ 23; [*see also* EFC No. 19, Pl.'s Ex. 5.] The letter further informed Plaintiff that it had until June 2021 to show compliance with all accreditation standards or face involuntary withdrawal of their accreditation. [EFC No. 19, Pl.'s Ex. 5.]

On July 23, 2019, Plaintiff requested clarification from Defendant on the decision to reduce the accreditation period. Compl. at ¶ 29. Defendant responded and confirmed that Plaintiff's re-admittance of Student was inconsistent with program policies and that the program lacked sufficient support staff to comply with accreditation requirements. *Id.* at ¶¶ 23–24. In response, Plaintiff immediately sought reaccreditation. [*See* EFC No. 22, at p.9.]

Plaintiff filed the above-captioned action[1] against Defendant on February 19, 2020—five months before a scheduled visit by Defendant to assess Plaintiff's application for reaccreditation. Compl. at ¶ 32; [*see also* EFC No. 20, Ex. F (stating that the next site visit was tentatively scheduled for the Third Quarter of 2020).] Following a July 2020 site visit (and during the course of this litigation), Defendant awarded Plaintiff's RT Program an eight-year accreditation, valid until 2028. [EFC No. 20, Ex. F.] The eight-year accreditation became effective on September 15, 2020. [ECF No. 21-1, at p.7.]

Now pending before the court are two motions, one requesting additional discovery and the other requesting dismissal on the basis of mootness. Plaintiff filed its Motion for Discovery on October 9, 2020. [ECF No. 17.] Defendant responded on October 23, 2020, and Plaintiff replied. [ECF Nos. 19, 21.] On the same day Defendant submitted its opposition to Plaintiff's request for additional discovery, it filed its Motion to Dismiss on the Basis of Mootness. [ECF No. 20.]

---

[1] The Complaint asserts four causes of action: (1) declaratory judgment as to complaint resolution, 28 U.S.C. § 2201; (2) declaratory judgment as to accreditation reduction, 28 U.S.C. § 2201; (3) arbitrary and capricious administrative action in violation of common law due process; and (4) permanent injunction.

Plaintiff responded on November 6, 2020, and Defendant submitted a reply. [ECF Nos. 22, 23.] Both motions are ripe for resolution by the court. Because Defendant's motion challenges subject-matter jurisdiction, the court begins there.

## STANDARD OF REVIEW

A motion to dismiss on the basis of mootness is evaluated under Federal Rule of Civil Procedure 12(b)(1). *Estate of Peeples v. Barnwell Cnty. Hosp.*, No. 1:13-cv-01678, 2014 WL 607586, at *5 (D.S.C. Feb. 14, 2014). "The burden of showing subject matter jurisdiction on a Rule 12(b)(1) motion rests with the plaintiff, as the party invoking it." *Alexander v. Barnwell Cnty. Hosp.*, 498 B.R. 550, 557 (D.S.C. 2013). The fundamental inquiry is whether the court has the authority to adjudicate a claim. *Occupy Columbia v. Haley*, No. 3:11-cv-03253, 2012 WL 13128872 (D.S.C Aug. 17, 2012). "When a case or controversy ceases to exist, the litigation becomes moot and the federal court no longer possesses jurisdiction to proceed. *Id.* at *5 (citing *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70–71 (1983)). If there is a question of whether a defendant's alleged misconduct could happen again, the burden shifts to the defendant to show that the actions which mooted the claim were voluntary. *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

## DISCUSSION

In its motion, Defendant contends its eight-year accreditation of Plaintiff's RT Program effective September 15, 2020, renders the action moot. [ECF No. 21-1 at pp.7–11.] In response, Plaintiff acknowledges the accreditation, but submits that a live controversy remains because it can seek "damages incurred . . . as a result of JRCERT's decision." [ECF No. 22 at p.9.] Further, Plaintiff argues that even if Defendant's mootness argument had merit, this court could maintain jurisdiction because the circumstances giving rise to the cause of action are capable of repetition and evading review. *Id.* Having considered the parties' positions, the court agrees with the

4

Defendant that the actions for declaratory and injunctive relief are moot. However, it also agrees with Plaintiff that the claim for damages survives the mootness analysis.

## I. Subject-Matter Jurisdiction, Mootness, and Dismissal.

Federal courts are courts of limited jurisdiction. Article III of the Constitution permits courts to hear only cases and controversies. U.S. CONST. art. III, § 2. "The doctrine of mootness constitutes a part of the constitutional limits of federal jurisdiction. . . . [A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Simmons v. United Mortg. and Loan Inv., LLC,* 634 F.3d 754, 763 (4th Cir. 2011) (quoting *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008)). Further, the underlying case or controversy must remain throughout the litigation. *See id.*

"A case can become moot either due to a change in factual circumstances, or due to a change in the law." *Id.* (quoting *BankWest, Inc. v. Baker*, 446 F.3d 1358, 1364 (11th Cir. 2006)). "Generally speaking, one such [factual] circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Id.* (quoting *Friedman's Inc. v. Dunlap,* 290 F.3d 191, 197 (4th Cir. 2007)). Thus, "[w]henever an action loses its character as a present live controversy during the course of the litigation, federal courts are required to dismiss the action as moot because federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *Bellamy v. Meachem*, No. 4:11-cv-0058, 2011 WL 5403395, at *1 (D.S.C. Oct. 17, 2011).

## II. 2020 Reaccreditation: Is there a Mootness Problem?

Here, it is undisputed that Defendant notified Plaintiff in June 2019 of a reduction in accreditation, and Plaintiff immediately began to seek reaccreditation, such that Plaintiff would not suffer a lapse in accreditation or involuntary withdrawal. [EFC No. 22, at p.9.] Thereafter,

Defendant granted Plaintiff an eight-year accreditation. [*See* EFC No. 20, Ex. F.] Through Defendant's motion, this court is tasked with determining whether this eight-year accreditation that occurred during the lawsuit renders the action moot. Plaintiff raises two arguments in opposition: (1) it should be allowed to proceed with the action to seek compensatory damages and (2) the case presents a situation where the actions are capable of repetition yet evade review. The court takes each argument in turn, in relation to the types of relief Plaintiff seeks.

### A. Declaratory/Injunctive Relief.

First, the court addresses Plaintiff's claims for declaratory judgment and injunctive relief. Plaintiff asks the court to declare that Defendant violated internal policies and that the reduction was inappropriate. The Plaintiff also requests that the court restore the initial eight-year accreditation term. Compl. ¶¶ 33–44, 50–56. The current question being, does the 2020 reaccreditation moot these claims? Unquestionably, the answer is "yes."

As outlined above, a case can become moot because of a change in the factual circumstances. Here, the factual change in circumstance is Plaintiff's receipt of reaccreditation through 2028. This reaccreditation moots Plaintiff's claims for declaratory and injunctive relief. Stated differently, even if Plaintiff succeeds on these claims, the court cannot grant accreditation beyond that which Plaintiff already received as part of the 2020 reaccreditation.

Moreover, Plaintiff does not dispute that Defendant has sole discretion in the number of years of accreditation it may award. Compl. ¶ 8; Ans. at ¶ 8. The fact that a program may be accredited up to eight years does not guarantee that a program will be awarded such an accreditation upon review. Ans at ¶ 8; *see* Compl. ¶ 8. When evaluating Plaintiff's accreditation worthiness, Defendant could have determined that the RT Program should only be awarded an additional three years, bringing Plaintiff to the original reaccreditation date of 2023. That did not happen here.

Instead, Defendant reviewed Plaintiff's application and awarded Plaintiff a new eight-year accreditation. Therefore, Plaintiff currently enjoys five years of accreditation beyond its original accreditation timeframe. [EFC No. 20, Ex. F.] Because the reaccreditation effectively awards Plaintiff the relief it sought through the claims for declaratory and injunctive relief, Plaintiff's first, second, and fourth causes of action are moot.

In an attempt to avoid mootness of these claims, Plaintiff argues the voluntary cessation exception.[2] Under the exception, the court evaluates a defendant's actions to determine whether the alleged wrongful act can be expected to reoccur. *Friends of Earth*, 528 U.S. at 190. To survive the exception, a defendant must show that its actions were voluntary in nature and not for the purpose of staving off litigation or mooting a claim against them. *Id.* To do so, the Defendant must show that the alleged wrongful act cannot be expected to reoccur. *Id.*

In this case, when Plaintiff received the reduction in accreditation, it immediately started the process of seeking reaccreditation. [*See* ECF No. 22 at p.9.] Thus, before the lawsuit was filed, Defendant was engaging with Plaintiff on the reaccreditation issue—*at Plaintiff's own request*. There is no dispute that the July 2020 site visit ultimately led to Defendant awarding Plaintiff an eight-year accreditation in September 2020. [EFC No. 20, Ex. F.] Thus, reaccreditation began at Plaintiff's request, and there is no evidence that the reaccreditation was awarded for the purposes of staving off litigation.

Moreover, Defendant's actions were voluntary. If the court were to remand on this issue, the best outcome for Plaintiff would be reinstatement of its original accreditation term. Reaccreditation to 2025, which is three years less than its current reaccreditation to 2028.

---

[2] Though Plaintiff cites authority from which this test is derived, Plaintiff does not specifically address whether Defendant's actions were voluntary.

Therefore, the court finds that the voluntary cessation exception does not apply.  The change in factual circumstances requires the court to dismiss the claims for declaratory and injunctive relief as moot.

### B. Common Law Due Process and Damages.

In addition to the declaratory and injunctive relief, Plaintiff seeks damages attributable to the unforeseen expense of engaging in the reaccreditation process three years early.  Compl. at WHEREFORE (5), (6); *see also id.* at ¶¶ 45–49 (arbitrary and capricious administrative action in violation of common law due process).[3]  Plaintiff argues that even if reaccreditation moots the declaratory and injunctive relief, it should be allowed to proceed with seeking compensatory damages.  The court agrees.

Even if the court were to remand this claim back to Defendant for a review of its reduction decision, Plaintiff would still be able to seek damages.[4]  Though the court's final remedy on this issue may be remand, remand does not preclude an award of damages.  *See Wards Corner Beauty Acad. v.  Nat'l Accrediting Comm'n*, No. 2:16-cv-639, 2017 WL 5712120,  at *7 n.12 (E.D. Va. Nov. 24, 2017) ("The court agrees with Defendant's position that*, if* a procedural due process violation is proven, this court should both: (1) remand the case to NACCAS for *de novo* review before unbiased members of the Commission; and (2) retain jurisdiction over the disputed issues

---

[3] In the Complaint, Plaintiff claims that Defendant violated common law due process when it allegedly relied on impermissible information in reaching the decision to reduce Plaintiff's accreditation.  Compl. at ¶¶ 45–49.  Plaintiff prays for money damages for the "unbudgeted fees and costs expended in being required to engage in the re-accreditation process."  Compl. at WHEREFORE (5).

[4]  In this regard, the court notes the inference from a recent Fourth Circuit Court of Appeals decision, *i.e.*, when damages are sufficiently pleaded and where voluntary action does not expressly moot the claim for damages, such a claim survives even where others may be moot. *Hirschfield v. Bureau of Alcohol, Firearms, Tobacco, & Explosives*, No. 19-2250, 2021 WL 4301564, at *1 n.1 (4th Cir. Sept. 22, 2021) (mooting claims and noting plaintiff "made no effort to claim she may seek damages").

until after the remand is resolved by the NACCAS Commission.") (emphasis added). Accordingly, Plaintiff *may* have the ability to renew its claim for damages in this court at a later time, if it is found that Defendant acted in an arbitrary and capricious manner. Because Plaintiff's prayer for damages stems from the alleged wrongful behavior of Defendant during its interim review of Plaintiff's RT program, simply reaccrediting Plaintiff for an additional eight-year term does not satisfy Plaintiff's prayer for compensatory damages, nor does it assure the court that the alleged wrongful behavior is incapable of repetition. As such, Plaintiff's third cause of action survives Defendant's motion.

## II. Motion for Additional Discovery

Because Plaintiff's third cause of action survives dismissal, the court turns to Plaintiff's motion. Plaintiff argues that its requested additional discovery materials, including additional depositions and interrogatories, are necessary for the completion of the administrative record. [EFC No. 17.] Defendant responds that the sought-after information goes beyond what is necessary to evaluate the accreditation dispute. [EFC. No. 19 pp. 9–10.] The court agrees with Defendant.

In accreditation cases, the administrative record serves as the primary source of information to determine what specific issues the accrediting body considered and decided and on what basis it decided those issues. *See Prof'l Massage Training Ctr. v. Accreditation Alliance of Career Sch. & Colls.,* 781 F.3d 161, 178–79 (4th Cir. 2015). "The proper standard of review of actions by private accrediting agencies considers only whether the accreditation decision was supported by substantial evidence or otherwise arbitrary and capricious." *Id.* at 166. In that regard, "[a]n administrative decision maker is entitled to a presumption of honesty and integrity." *Id*. at 178. And "[w]hen performing the deferential review, a district court should generally confine itself 'to

9

the record that was considered by the accrediting agency at the time of the final decision.'" *Wards*, at *2 (quoting *Prof'l Massage*, 781 F.3d at 174–75).

Here, there is a 1,400-page administrative record regarding Defendant's decision to reduce Plaintiff's accreditation award. While Plaintiff asserts that this record is not reflective of all of the information Defendant relied on to make its decision, [ECF No. 17 at p. 6], it fails to provide the court with a showing of bad faith or improper behavior necessary to expand discovery beyond the administrative record. Because the court is satisfied that the administrative record is complete and sufficient for the determining whether the Defendant acted in an arbitrary and capricious manner, Plaintiff's motion is denied.

## CONCLUSION

For the reasons outlined herein, Defendant Joint Review Committee on Education in Radiology Technology's Motion to Dismiss, ECF No. 20, is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's first, second, and fourth causes of action are **DISMISSED** as MOOT. Plaintiff York Technical College's Motion for Additional Discovery, ECF No. 17, is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

September 27, 2021
Florence, South Carolina